```
            IN THE UNITED STATES DISTRICT COURT FOR
           THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                  *
KAINE KALAMA
                                  *

                                  *
     Plaintiff,
v.                                *     CIVIL NO.: WDQ-05-2769

STATE OF MARYLAND,                *
et al
                                  *

     Defendants.                  *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION AND ORDER

Kaine Kalama sued her former employer, the State of Maryland, Department of Health & Mental Hygiene (the "Department"), Leona Spencer, and Margaret Stagg for national origin discrimination[1] and retaliatory discharge in violations of Title VII of the Civil Rights Act of 1964 ("Title VII")[2], the Maryland Declaration of Rights[3], and Section 1983 of Title 42 of the United States Code("Section 1983")[4]. Pending is the Defendants' motion for summary judgment. For the following reasons, the Defendants' motion for summary judgment will be granted.

---

[1] Kalama's complaint also contains allegations of race discrimination. *See* Complaint, Count II. However, she concedes that these allegations are meritless. *See* Mot. Summ. J. Exh. 13 ("Kalama Depo.") at pp. 182-184. Accordingly, these claims are dismissed.

[2] 42 U.S.C. §§ 2000e *et seq.* (2006).

[3] MD. DEC. OF R. ART. 24 (2006).

[4] 42 U.S.C. § 1983 (2006).

1

Case 1:05-cv-02769-WDQ   Document 33-1   Filed 08/30/06   Page 2 of 11

I.   BACKGROUND

From September 2001 through February 2004, Kalama, a Nigerian female, worked as a clerical worker with the Department's Provider Enrollment Unit (the "PEU"). *See* Complaint at ¶7. The PEU was comprised of 9 other employees--8 African-Americans and 1 Caucasian, all of whom were female. *See* Mot. Summ. J. Exh. 11 ("Spencer Aff.") at ¶16. Kalama had several duties, including mailing enrollment packets to healthcare providers. *See id*. at ¶49e. Throughout her employment, Kalama's mailings were often either incomplete or untimely. *See id*. at ¶¶73-84; *See also* Mot. Summ. J. Exh. 12 ("Stagg Aff.") at ¶¶51-67. Kalama's supervisors, Leona Spencer and Margaret Stagg--both whom are African-American--gave her several verbal counselings about her poor work performance. *See* Stagg Aff. at ¶¶54-58, 63, 70-72, 75; Spencer Aff. at ¶¶86, 90, 100. Kalama also made unauthorized long distance calls and failed to attend a mandatory meeting. *See* Spencer Aff. at ¶86; Stagg Aff. at ¶¶72, 74. Because Kalama's work performance and behavior did not improve, Kalama was terminated in February 2004. *See* Spencer Aff. at ¶101; Stagg Aff. at ¶86.

Kalama claims that the Department discriminated against her by treating her differently than the African-American employees. *See* Opp. Exh. 1 ("Kalama Aff."). She alleges that because of her national origin she was denied training opportunities, given a disproportionate workload, disciplined more harshly and paid less. *See id*. She contends that she was

terminated for protesting this discrimination. *See* Kalama Depo. at p. 149.

Kalama filed a discrimination and retaliation claim with the Equal Employment Opportunity Commission ("EEOC"). On May 11, 2005, the EEOC issued Kalama a right to sue letter. *See id.* On October 6, 2005, Kalama initiated this action.

## II. LEGAL DISCUSSION

A. Motion for Summary Judgment

1. Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask ... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Electric Industrial Company*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  A "scintilla" of evidence is not sufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

    2.   Title VII--National Origin

Kalama contends that she was discriminated against based upon her national origin.

Title VII provides that it "shall be an unlawful employment practice for an employer... to discriminate against any individual with respect to her....terms, conditions, or privileges of employment, because of such individual's national origin...." 42 U.S.C. § 2000e-2(a).

To establish a Title VII disparate treatment claim, Kalama must prove that:(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred "under circumstances which give rise to an inference of discrimination".  *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001).

Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as national origin.  *See Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994).

(A)  Discipline

Kalama contends that the Department unfairly enforced its disciplinary practices.  In support, Kalama cites two instances

4

where she was disciplined differently than other employees. First, Kalama alleges that unlike other employees, she was counseled for eating at her desk. *See* Kalama Aff. at ¶5; Kalama Depo. at pp.86-90. Kalama, however, cannot establish that the counseling she received was an adverse employment action. Such discipline, without evidence that the warning could lead to further disciplinary action does not constitute an adverse employment action. *See Nye v. Roberts*, 159 F. Supp. 2d 207, 213-14 (D. Md. 2001) (finding a written reprimand did not constitute an adverse employment action because the reprimand did "not state that it would lead to her termination or demotion or a decrease in pay"); *see also Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001) ("Terms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from a state agency's disciplinary procedures"). Here, Kalama recounts two instances where she was reminded of the Department's policy against employees eating at their desks. *See* Kalama Depo. at p.87. However, there is no evidence that these simple warnings led to her termination.

Second, Kalama argues that although she was terminated for misconduct and poor work performance, the Defendant retained Annette Brown, an African-American employee, who was both insubordinate and a poor worker. *See* Complaint at ¶14; Kalama Depo. at pp. 178-79. Although the Plaintiff contends that she was treated differently because of her national origin, she has not provided any evidence of any discriminatory animus on the part of

5

the Defendant. Instead, she admitted that she was unclear why Brown was never disciplined. *See* Kalama Depo. at p.178. She, however, speculated that a likely reason was that Spencer liked Brown. *See id.* Even assuming that the Plaintiff is correct, this alone does not prove discrimination. The fact that Spencer somehow favored Brown would work to the detriment of all employees--irrespective of national origin. *Blue v. United States Dep't of Army*, 914 F.2d 525, 541 (4th Cir. 1990)(evidence that employer favored an employee because of personal feelings was not discriminatory). Title VII does not ensure that all employment decisions will be fair, but only that they will be free from impermissible discrimination. *Blue,* 914 F.2d at 541 *(citing Casillas v. United States Navy*, 735 F.2d 338, 344 (9th Cir. 1984)).

(B)  Increased Workload

Kalama also contends that the Department disproportionately increased her workload by reassigning her other employees' tasks.

An adverse employment action is one which adversely affects the terms, conditions or benefits of the plaintiff's employment. *See Munday v. Waste Management of N. Am., Inc.,* 126 F.3d 239, 243 (4th Cir. 1997), *cert. denied*, 522 U.S. 1116 (1998). To be "adverse", an employment action must do more than merely make an employee unhappy, but it need not always involve termination or even a decrease in benefits or pay. *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999). A change in an employee's duties may constitute an adverse employment action if the change had some

6

"significant detrimental effect" on the employee. *Id*. Kalama merely complained that the reallocation of work was "unfair". *See* Kalama Depo. at pp. 62-66; 136. She offered no evidence, however, that the increased workload negatively altered her working conditions. Moreover, the record indicates that Kalama's increased workload was only temporary. *See* Spencer Aff. at ¶¶49, 60, 73.

(C)  Training

Kalama also alleges that she experienced disparate treatment relating to training opportunities. This allegation, however, was not contained within her EEOC charge. An administrative charge defines the scope of a plaintiff's federal court claims. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996). These claims are limited to those stated in the initial charge, reasonably related to the complaint and developed by reasonable investigation of the charge. *Id*. at 963. Kalama's EEOC charge specifically alleged discrimination relating to discipline, workload distribution, termination, and wages. *See* Def. Mot. Summ. J. Exh. 2 ("EEOC Charge"). The EEOC, therefore, would not have had reason to investigate other claims. *See Dennis v. County of Fairfax*, 55 F.3d 151, 156-57 (4th Cir. 1995) (charge that alleged discrimination in defendant's disciplining did not cover broader pattern of discrimination in hiring, training, and promotion). Accordingly, the Plaintiff's disparate training claim will be precluded.

3.  Title VII--Wage Discrimination

Kalama asserts that she was paid lower wages than Brown

7

because of her national origin.

To establish a prima facie case of Title VII wage discrimination, Kalama must prove that she was paid lower wages because she is Nigerian. *Brinkley-Ob. v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994). Kalama admits that she does not know the reason why Brown received a raise. *See* Kalama Depo. at p. 145. Moreover, as stated above, Kalama claims that Brown was treated differently because she was liked, not because she was African-American. Accordingly, Kalama's claim fails.

4. Title VII--Retaliation

Kalama contends that she was terminated shortly after complaining about discrimination.[5]

The elements of a retaliation claim are: (1) engagement in a protected activity; (2) adverse employment action by the employer; and (3) a causal connection between the protected activity and the asserted adverse action. *Von Gunten*, 243 F.3d at 863. Even assuming Kalama has established a prima facie case, her claim still fails. A prima facie case only creates an inference of discrimination. The employer can rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged adverse employment action. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). The plaintiff always

---

[5] Kalama's complaint also alleges other retaliatory acts-- denial of training and access to an adequate workspace and increased work load. *See* Complaint at ¶ 24. Kalama's EEOC charge, however, is limited to retaliatory discharge. Therefore, her other retaliation claims are precluded. *See Evans*, 80 F.3d at 962-63.

bears the ultimate burden of proving that the employer's articulated reasons were not its true reasons, but were a pretext for discrimination. *Evans*, 80 F.3d at 959 (citing *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The Defendant has adduced ample evidence of Kalama's poor work performance. *See* Mot. Summ. J. Exhs. 1 ("Letter of Termination"); Stagg Aff. at ¶¶54-58, 63, 70-72, 75; Spencer Aff. at ¶¶86, 90, 100.  Kalama, however, offers no evidence of pretext. Accordingly, Kalama's retaliation claim fails as well.

5.   Section 1983--Equal Protection

Section 1983 provides a remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983 (2006).

Similar to her Title VII claims, Kalama alleges that she was treated differently than similarly situated African-American employees with respect to discipline, salary, training and workload.

 As Kalama's Title VII claims fail, her Section 1983 claims fail as well. *See Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998) (federal constitutional claims brought pursuant to Section 1983 are analyzed under Title VII proof scheme).[6]

---

[6]Kalama's claim under the Maryland Declaration of Rights also fails. *See Gray-Hopkins v. Prince George's County*, 163 F.Supp. 2d 571, 582 (D.D. 2001) (Article 24 is construed in *pari materia* with the Fourteenth Amendment).

CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment will be granted.

Date August 30, 2006         _____/S/_____
                                    William D. Quarles, Jr.
                                    United States District Court Judge